1  Jeffrey B. Maltzman, CA Bar No. 131758
   Edgar R. Nield, CA Bar No. 135018
2  Gabrielle De Santis Nield, CA Bar No. 110930
   Rafaela P. Castells, CA Bar No. 290828
3  MALTZMAN & PARTNERS, P.A.
   681 Encinitas Boulevard, Suite 315
4  Encinitas, CA 92024
   Telephone: (760) 942-9880
5  Facsimile:  (760) 942-9882
   jeffreym@maltzmanpartners.com
6  edn@maltzmanpartners.com
   gabn@maltzmanpartners.com
7
   Attorneys for Defendant, PRINCESS CRUISE LINES, LTD.
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  KEN AND MARLA SALTZSTINE,          CASE NO.: 2:20-CV-04997-RGK-SK
    individually,
12                                     **DEFENDANT PRINCESS CRUISE
13              Plaintiff,             LINE LTD.'S MOTION TO DISMISS
                                       PLAINTIFFS' COMPLAINT**
    vs.
14                                     Date:  August 31, 2020
15                                     Time: 9:00 a.m.
    PRINCESS CRUISE LINES, LTD., a     Judge: Hon. R. Gary Klausner
16  Bermuda corporation,               Courtroom: 850
17              Defendants.            Magistrate: Hon. Steve Kim
18                                     Filed:  06/05/2020

19

20

21

22

23

24

25

26

27

28

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................... 1

II.  LEGAL STANDARD ............................................................. 3

III.  MEMORANDUM OF LAW ...................................................... 3

A.  Federal Maritime Law Applies to Plaintiffs' Claims ............................. 4

B.  Plaintiffs Fail to Plausibly Allege They Were Within the Zone of Danger ........................................................................ 4

1.  Plaintiffs Fail to Plausibly Allege That They Contracted and Have Suffered Symptoms of The Disease .......................... 4

2.  Plaintiffs' Allegations Do Not Satisfy the Zone of Danger Test ............................................................... 7

3.  Finding Plaintiffs' Claims Sufficient Would Invite the Exact Policy Consequences the Supreme Court Warned Against ......................................................... 11

C.  Plaintiffs' Fail to Allege Non-Trivial Physical Injury Caused by Distress ........................................................ 13

D.  Punitive Damages are Foreclosed as a Matter of Law ........................... 14

E.  Plaintiffs' Complaint Violates Federal Rule of Civil Procedure 8 ....... 16

F.  Plaintiffs' Breach-of-Contract Claim Fails ........................................ 17

G.  Plaintiff Alleges an Incorrect Standard of Care Under a California Statute Which Is Preempted by Maritime Law .................. 18

V.  CONCLUSION ................................................................. 20

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-04997-RGK-SK

# TABLE OF AUTHORITIES

## Cases

*Adamson v. Port of Bellingham*, 907 F.3d 1122 (9th Cir. 2018)...............................19

*Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) ...........................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................3, 9, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...........................................3

*Bonner v. Union Pac.*, 123 F. App'x 777 (9th Cir. 2005) ...........................................8

*Carden v. NW. Airlines, Inc.*, 2005 WL 8155001 (C.D. Cal. Aug. 26, 2005) ..........18

*Casorio v. Princess Cruise Lines*, Ltd., 677 Fed. Appx. 361 (9th Cir. 2017).....19, 20

*Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997)...............................19

*Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012) ...............................7

*Churchill v. F/V Fjord*, 892 F.2d 763 (9th Cir. 1998)...............................................15

*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994) .............2, 6, 7, 10, 11, 12

*Crawford v. Nat'l R.R. Passenger Corp.*, 2015 WL 8023680 (D. Conn. Dec. 4, 2015) ......................................................................................................................8

*CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) ...............................................8

*Destfino v. Kennedy*, 2008 WL 4810770 (E.D. Cal. Nov. 3, 2008) ..........................17

*Duet v. Crosby Tugs, LLC*, 2008 WL 5273688 (E.D. La. Dec. 16, 2008) ...............13

*Dunn v. Hatch*, 792 F. App'x 449 (9th Cir. 2019) .....................................................14

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986).................19

*Ellenwood v. Exxon Shipping*, 795 F. Supp. 31 (D. Me. 1992)................................13

*Everett v. Carnival Cruise Lines*, 912 F.2d 1355 (11th Cir. 1990) ..........................20

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) ...............................................16

*Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077 (9th Cir. 2009)................................16

*Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749 (M.D.N.C. 2014)..................8, 11, 18

*Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190 (2d Cir. 2011)..........................8

*Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F. Supp. 2d 1278 (S.D. Fla. 2007) 20

*Hutton v. Norwegian Cruise Line Ltd.*, 144 F.Supp.2d 1325 (S.D. Fla. 2001).........10

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995)..4

ii

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1  *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318 (11th Cir. 1989) ........................ 20

2  *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625 (1959) .............. 19

3  *Lam v. Liberty Mut. Group, Inc*., 2017 WL 4682712 (C.D. Cal. May 18, 2017) ..... 17

4  *Leftow v. Princess Cruise Line, Ltd.*, 2018 WL 6133714 (C.D. Cal. Jan. 11, 2018) 20

5  *Lugo v. Carnival Corp.*, 154 F.Supp.3d 1341 (S.D. Fla. Dec. 31, 2015) .................. 19

6  *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001) .......................... 13

7  *Mason v. County of Orange,* 251 F.R.D. 562 (C.D.Cal.2008) .................................. 17

8  *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997) .1, 2, 3, 5, 6, 7, 9, 10

9  *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1986) ............................................... 15, 16

10 *Naeyaert v. Kimberly-Clark Corp.,* 2018 WL 6380749 (C.D. Cal. Sept. 28, 2018). 10

11 *Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018) ............2, 7

12 *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003) ................2, 5, 6, 7, 8, 10, 12, 16

13 *OJ Insulation, Inc. v. First Speciality INS. Co*., 2011 WL 13116734 (C.D. Cal. Feb.
14    10, 2011) ....................................................................................................................... 18

15 *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990) ..................... 19

16 *Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23 (1st Cir. 2018) ........... 10

17 *Smith v. A.C. & S., Inc.*, 843 F.2d 854 (5th Cir.1988) ................................................. 8

18 *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343 (S.D. Fla. 2008) ............................... 8

19 *Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168 (10th Cir.2000) ........................... 11, 18

20 *Sollberger v. Wachovia Securities LLC*, 2010 WL 2674456 (C.D. Cal. June 30,
      2010) .......................................................................................................................... 17

21 *Spindler v. California*, 2020 WL 2559442 (C.D. Cal. Jan. 20, 2020) ...................... 17

22 *Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033 (9th Cir. 2010) .................... 7

23 *Stanislaus Food Products Co. v. USS-POSCO Industries*, 2010 WL 3521979 (E.D.
24    Cal. Sept. 3, 2010) ...................................................................................................... 17

25 *State of Md. Dep't of Nat. Res. v. Kellum*, 51 F.3d 1220 (4th Cir. 1995) ................. 19

26 *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313 (M.D. Fla. 2002) ........................... 20

27 *Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005) ...................................... 4

28 *Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318 (S.D. Fla. 2007) ...... 13

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

*The Dutra Grp. v. Batterton*, 139 S. Ct. 2275 (2019)..............................12, 14, 15, 16

*Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327 (S.D. Fla. 2016)...............19, 20

*Torres v. Carnival Corp.*, 635 Fed. Appx. 595 (11th Cir. Nov. 20, 2015) ..............19

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992)....................................................................................................................19

*Weissberger v. Princess Cruise Lines, Ltd.*, 2:20-CV-02328-RGK-SK, 2020 WL 3977938 (C.D. Cal. July 14, 2020) ............................................................1, 12

*White v. NCL Am., Inc. & Norwegian Cruise Line Ltd.*, 2007 WL 414331 (S.D. Fla. Feb. 6, 2007)...................................................................................................20

*Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560 (11th Cir. 1991) ...............4

*Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403 (S.D. Fla. 1995)......13, 14

*Williams v. United States*, 711 F.2d 893 (9th Cir.1983) ...........................................4

*Wyler v. Holland Am. Line-USA, Inc.,* 2002 WL 32098495 (W.D. Wash. Nov. 8, 2002)...................................................................................................................13

<u>Statutes</u>

46 U.S.C. §30303........................................................................................................16

<u>Rules</u>

Fed. Rule Civ Pro 12(b)(6) ................................................................................3, 4, 14

Fed. Rule Civ Pro 12(f) ...........................................................................................14

Fed. Rule Civ Pro 8 .........................................................................................16, 17

L.R. 7-3 .....................................................................................................................1

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

Defendant, PRINCESS CRUISE LINES, LTD. ("PRINCESS") hereby files its Motion to Dismiss the Complaint. This motion is made following several conferences pursuant to L.R. 7-3 between June 24, 2020 and July 24, 2020.

## I. INTRODUCTION

Plaintiffs ask this Court to recognize an unprecedented theory of liability for emotional distress, unmoored from any physical harm, that is squarely foreclosed by Supreme Court precedent. This Court has previously found, Plaintiffs' theory would open the door to open-ended liability for every business, school, church, and municipality across America, stalling economic recovery in the wake of the COVID-19 pandemic and complicating the ability of businesses to reopen. *Weissberger v. Princess Cruise Lines, Ltd.*, 2:20-CV-02328-RGK-SK, 2020 WL 3977938 (C.D. Cal. July 14, 2020). Consistent with Supreme Court and Ninth Circuit precedent, this Court should reject Plaintiffs' attempt to expand emotional distress liability and dismiss the Complaint.

Plaintiffs are among over 150 individuals who have filed nearly identical lawsuits against Defendant for emotional distress based on their fear that they might have contracted COVID-19 during their cruise. Like dozens of virtually identical cases, many of which this court has previously dismissed, Plaintiffs embarked the *Grand Princess* cruise ship on February 21, 2020. (Compl. ¶ 11); *Weissberger, supra*. Plaintiffs do not claim they contracted COVID-19, suffered any symptoms of COVID-19, or that they ever came into direct contact with the virus or anyone who had it. Accepting Plaintiffs' allegations as true for the purposes of this Motion to Dismiss, the Complaint makes clear that Plaintiffs' claims fail as a matter of law.

The Supreme Court has held a plaintiff cannot recover for emotional distress stemming from potential exposure to a disease "unless, and until, he manifests symptoms of a disease." *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997). This rule applies to claims of emotional distress brought under federal maritime law. *Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

2018). Supreme Court precedent requires dismissal here, because Plaintiffs do not plausibly claim that they either contracted COVID-19 or had sufficient symptoms of disease to establish they had contracted the virus. The Supreme Court has reaffirmed this rule precisely to avoid the oppressive societal costs that would occur if claims like Plaintiffs' could go forward, and explained, "contacts, even extensive contacts," with potential carriers of diseases "are common." *Metro-North*, 521 U.S. at 434. Unlike with physical injury, "there are no necessary finite limits on the number of persons who might suffer emotional injury" as a result of fear of contracting an illness. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 546 (1994). If anyone potentially exposed to a contagion could obtain damages for emotional distress, "[t]he large number of those exposed and the uncertainties that may surround recovery" would prompt a "flood" of lawsuits, *Metro-North*, 521 U.S. at 434, and would lead to "the very real possibility of nearly infinite and unpredictable liability for defendants." *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 146 (2003).

As of the date of filing this brief, over 4.5 million cases of COVID-19 have been confirmed in the United States alone and 17.3 million cases worldwide.[1] Businesses across America have inevitably had cases on their premises. If Plaintiffs' theory of liability succeeds, then all of the millions of individuals who passed through those venues can similarly claim to have suffered emotional distress if they learn that another person who was later diagnosed with COVID-19 was present. Straightforward application of the Supreme Court's rules governing these fear of disease claims will prevent this cataclysmic result.

There is a second independent barrier to Plaintiffs' claims: In addition to requiring that a plaintiff contract the disease or at least show sufficient symptoms to suggest the plaintiff has contracted the disease, courts further require that the plaintiff's fear must give rise to serious physical consequences before emotional

---

[1] *See* Coronavirus Disease 2019 (COVID-19), Cases in the U.S., Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

distress damages can be recovered. Plaintiffs here do not claim a diagnosis of COVID-19, symptoms suggesting they contracted the virus, or the requisite serious physical consequences stemming from their alleged emotional distress.

If individuals in Plaintiffs' situation can recover, businesses, school, churches and other venues across America will be forced to keep their doors closed, lest they risk crushing liability to each and every one of their invitees for emotional distress, based on the mere possibility of infection, because someone was later discovered to have the virus. The Supreme Court's limits on emotional distress for fear of disease claims are intended to avoid exactly that result, and a straightforward application of those limits here mandates dismissal.

## II.      LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

## III.     MEMORANDUM OF LAW

Recognizing the potential for widespread liability in fear-of-disease cases, courts apply two strict limits on such cases. First, the Supreme Court has held that a plaintiff cannot recover for emotional distress stemming from alleged exposure to an illness "unless, and until, he has symptoms of a disease." *Metro-North*, 521 U.S. at 426-27. Second, courts independently require that a plaintiff plausibly allege serious physical manifestations of their purported emotional distress. Plaintiffs have not plausibly alleged either symptoms or a physical manifestation of their distress, and

MALTZMAN & PARTNERS

681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880 Fax: (760) 942-9882

3

thus their case must be dismissed under Rule 12(b)(6). Even if Plaintiffs' claims survive, their Complaint should be dismissed based on its failure to allege any facts showing Plaintiffs ever came into actual contract with the virus and their request for punitive damages should be dismissed or stricken. Plaintiffs' breach-of-contract claim fails to set forth the required elements. Plaintiffs' state law based claim alleges an inapplicable standard of care and is preempted by maritime law. Finally, the Complaint should be dismissed as it runs afoul of the Rule 8 pleading standard.

### A. Federal Maritime Law Applies to Plaintiffs' Claims

As Plaintiffs acknowledge by invoking this Court's maritime jurisdiction and stating that the case "involves a maritime tort" (Compl. ¶ 3), Federal maritime law applies to Plaintiffs' claims.[2] Maritime law applies when "(1) the alleged wrong occurred on or over navigable waters, and (2) the wrong bears a significant relationship to traditional maritime activity." *Williams v. United States*, 711 F.2d 893, 896 (9th Cir.1983). "'[V]irtually every activity involving a vessel on navigable waters' is a 'traditional maritime activity sufficient to invoke maritime jurisdiction.'" *See Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) ((quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 542 (1995))); *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1654 n. 10 (11th Cir. 1991) ("In maritime tort cases such as this one, in which injury occurs aboard a … ship upon navigable waters, federal maritime law governs the substantive legal issues.").

### B. Plaintiffs Fail to Plausibly Allege They Were Within the Zone of Danger

Under well-established principles that govern emotional distress claims brought under federal maritime jurisdiction, Plaintiffs' claims should be dismissed.

#### 1. *Plaintiffs Fail to Plausibly Allege That They Contracted and Have Suffered Symptoms of The Disease*

---

[2] Plaintiffs' Passage Contract applicable to their voyage similarly invokes maritime law. See, https://www.princess.com/legal/passage_contract/plc.html at Section 1.

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

The Supreme Court has "sharply circumscribed" recovery under federal law for "stand-alone emotional distress claims"—*i.e.*, claims of emotional harm that are not "brought on by a physical injury or disease"—by requiring that the plaintiff be within the "zone of danger" of defendant's allegedly negligent conduct. *Ayers,* 538 U.S. at 147 (2003). The Supreme Court's zone of danger test "confines recovery for stand-alone emotional distress claims to plaintiffs who: (1) 'sustain a *physical impact* as a result of a defendant's negligent conduct'; or (2) 'are placed in *immediate risk of physical harm* by that conduct'—that is, those who escaped instant physical harm, but were 'within the zone of danger of physical impact.'" *Id.* at 146 (emphasis added).

In *Metro-North*, the Supreme Court set forth a more specific, categorical version of the zone of danger test that governs claims of emotional distress based on alleged negligent exposure to a disease. Under *Metro-North*, a plaintiff alleging emotional distress from such exposure "cannot recover unless, and until, he manifests symptoms of a disease." 521 U.S. at 426-27. There is no liability for emotional distress from fear of contracting a disease unless the Plaintiff has been diagnosed with the disease or has symptoms to suggest they have the illness.

The Supreme Court has reaffirmed *Metro-North*'s rule, explaining in *Ayers* that "emotional distress damages may not be recovered" by "disease-free" plaintiffs. 538 U.S. at 141. The Court specifically "decline[d] to blur, blend, or reconfigure" the "clear line" between "disease-free" plaintiffs, who cannot recover, and those "who suffer from a disease," who can recover under certain conditions. *Id.*; *see also id.* at 146 (explaining that because the plaintiff in *Metro-North* "had a clean bill of health," the Court "rejected his entire claim for relief"). The Court made clear that its rule applies to any claim based on alleged exposure to a potential source of disease—specifically including "germ-laden air." *Metro-North*, 521 U.S. at 437.

By contrast, mere *exposure* to a contagion is insufficient to establish someone is within the required "zone of danger," under either the "physical impact" prong or

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

5

the "immediate risk of physical harm" prong. In *Metro-North*, the plaintiff's employer had negligently exposed him to a "massive" and "tangible" amount of asbestos, placing him in direct, close contact with asbestos for about an hour a day over a three-year period as he removed asbestos from pipes, often "covering himself with insulation dust that contained asbestos." *Id.* at 427. The plaintiff feared that this intense prolonged exposure to asbestos increased his chances of dying from cancer and the plaintiff introduced expert testimony supporting that his risk of cancer had in fact increased. *Id.* The Supreme Court nonetheless held that the plaintiff could not recover for emotional distress since he did not ultimately contract cancer, holding that his exposure to the disease-causing substance alone was insufficient to establish emotional distress liability for fear of contracting a disease. *Id.* at 430 (quoting *Gottshall*, 512 U.S. at 547-48). The Court explained that if "a simple (though extensive) contact with a carcinogenic substance" were sufficient to permit recovery, it would not "offer much help in separating valid from invalid emotional distress claims." *Id.* at 434. "Judges would be forced to make highly subjective determinations concerning the authenticity of claims for emotional injury, which are far less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552.

In imposing these strict limits on emotional distress claims, the Supreme Court contrasted claims where a plaintiff alleges emotional harm "*brought on by* a physical injury[] or disease," which are not subject to the same zone of danger restriction. *Ayers*, 538 U.S. at 147-48. For example, a plaintiff who has contracted asbestosis after asbestos exposure can "seek compensation for fear of cancer as an element of his asbestosis-related pain and suffering damages." *Id.* at 158. The same plaintiff who was exposed to asbestos and who did not contract asbestosis cannot.

The Supreme Court adopted the strict zone of danger test specifically to avoid the "uncabined recognition of claims for negligently inflicted emotional distress," which would "hol[d] out the very real possibility of nearly infinite and unpredictable

liability for defendants." *Ayers*, 538 U.S. at 146 (2003) (quoting *Gottshall*, 512 U.S. at 546). Although the Supreme Court decisions developing the zone of danger test arose in the context of the Federal Employers' Liability Act (FELA), the Ninth Circuit has held that the test governs all emotional-distress claims, including those arising under federal maritime law. *See Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010); *see also, e.g.*, *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337-38 (11th Cir. 2012) (per curiam) ("federal maritime law has adopted ... the 'zone of danger' test").

This Court has previously applied these same principals to dismiss numerous similar "fear of COVID-19" cases to the matter presently at issue. *Weissberger, supra.* Other cases involving other diseases have been similarly rejected when the plaintiffs did not contract the illness. In *Negron*, a passenger and her family were disembarked to a hospital in Barbados and claimed that, while at the hospital, they were exposed to Ebola virus. *Negron* at 1360. The passengers were not allowed to return to the ship, which they claim added to their anxiety and they filed suit for "severe psychological damages, emotional distress, much personal discomfort, uncertainty, fear and lack of safety," and "undue expenses and costs." *Id.* Applying *Metro-North*, the Court dismissed their claim, holding the passengers cannot recover for emotional harm when they "do not specify any physical harm for which they seek recovery" and there were "no plausible allegations that the Plaintiffs sustained a 'physical impact' merely by being sent to a hospital" which had Ebola-infected patients in the same hospital. *Id.* at 1362.

## 2.  Plaintiffs' Allegations Do Not Satisfy the Zone of Danger Test

The hard-and-fast rule from *Metro-North*, precluding a plaintiff's recovery for emotional distress claims "unless, and until, he manifests symptoms of a disease," requires dismissal of this action. 521 U.S. at 427.

Plaintiffs do not allege that they contracted COVID-19 as a result of exposure on the *Grand Princess*. Nor do they allege any symptoms. Indeed, they do not (and

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

cannot) allege that they ever came into close contact with the disease aboard the ship such that they faced a probability of contracting it. Rather, Plaintiffs allege only that other passengers on their vessel were exposed to passengers who previously had disembarked the ship and were later confirmed to be infected with COVID-19. Specifically, they state that "at least two passengers" who disembarked from the previous cruise "had symptoms of the coronavirus," and that "sixty two passenger on board the Plaintiffs' cruise … were exposed to the passengers that were confirmed to be infected, and later died." Compl. ¶¶ 36-37.  That is nowhere near sufficient under *Metro-North*, which, again, squarely holds that a plaintiff cannot recover "unless, and until, he manifests symptoms of a disease." 521 U.S. at 427.[3]

Even setting aside *Metro-North*'s categorical rule that requires a diagnosis or symptoms of a disease as a threshold to recovery, Plaintiffs still would not have stated a claim under the zone of danger test. Federal courts routinely dismiss emotional distress claims when the plaintiff has not plausibly alleged that he actually suffered a physical impact or faced an imminent threat of physical harm. *See, e.g., Bonner v. Union Pac.*, 123 F. App'x 777, 778 (9th Cir. 2005); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1355 (S.D. Fla. 2008); *Crawford v. Nat'l R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *12 (D. Conn. Dec. 4, 2015); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 759 (M.D.N.C. 2014); *see also, e.g., Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 199 (2d Cir. 2011) (affirming dismissal of IIED claim where no allegation that plaintiff was

---

[3]Even if Plaintiffs *had* alleged symptoms, they would still face an independent bar to show that their fear of contracting COVID-19 was "genuine and serious"—something beyond "general concern for [one's] future health." *Ayers*, 538 U.S. at 157-58 (quoting *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th Cir.1988)); *see CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) (plaintiffs seeking fear-of-disease damages "must satisfy a high standard in order to obtain them"). Plaintiffs' conclusory allegations that they sustained "injuries," "pain and suffering," and "residual disability," are insufficient. (Compl. ¶ 21). Significantly, none of these Plaintiffs allege they experienced symptoms of the virus. Plaintiffs do not allege their "injuries," "pain and suffering," and "residual disability," were related in any way to COVID-19. Further, these scant claims are insufficient to defeat the instant Motion.

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

in zone of danger). Plaintiffs have not claimed any "physical impact"; again, it is black-letter law that an exposure to a source of disease is not a "physical impact" under Supreme Court precedent. *Metro-North*, 521 U.S. at 430.

Nor have Plaintiffs plausibly alleged an "immediate risk of physical harm." Plaintiffs' bare assertion that they "are at actual risk of immediate physical injury," is precisely the sort of "[t]hreadbare recital [] of the elements of a cause of action" that cannot defeat a motion to dismiss. *Ashcroft v. Iqbal,* (2009) 556 U.S. 662, 678. Even if mere exposure could create an "actual risk" under the zone of danger test—and it cannot—Plaintiffs do not allege how, when or where they were exposed to COVID-19. Plaintiffs conspicuously fail to assert that they came into direct contact with any person who had COVID-19, and instead assert only that there were other passengers somewhere aboard the ship—one with thousands of passengers and crew—who had come into contact with people who were later discovered to be infected. Plaintiffs' Complaint alleges no potential route of transmission.

There are 649 cities in California with populations smaller than the 3,700-person population of the *Grand Princess*.[4] If Plaintiffs' allegation that merely being in the same population of 3,700 people is sufficient to satisfy the zone of danger requirement, then anyone who lived in any of those 649 cities could become subject to emotional distress liability whenever they invited anyone onto their premises if it was later discovered someone else in the town had COVID-19.

Plaintiffs' failure to allege direct exposure makes their claim doubly deficient under *Metro-North*. The plaintiff in *Metro-North* had been exposed to asbestos daily basis for a three-year period, and *still* the Court foreclosed recovery. *Metro-North*, 521 U.S. at 427. Plaintiffs allege nothing of the sort here.

Moreover, now that the window of potentially contracting COVID-19 has long passed, Plaintiffs' claim must fail under the widely accepted, independent rule

---

[4] https://www.california-demographics.com/cities_by_population

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

that if "at the time the court reviews a claim, a plaintiff who no longer fears contracting the disease or that risk, may not pursue a claim for emotional distress based on the earlier fear." *Naeyaert v. Kimberly-Clark Corp.,* 2018 WL 6380749, at *8 (C.D. Cal. Sept. 28, 2018). This rule, consistent with the zone of danger test, ensures that only those whose fears actually manifest in the form of an actual diagnosis can recover, in the interest of preventing a "flood" of cases inherently "less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552.

Cases that *do* find an immediate risk of harm provide a helpful contrast to Plaintiffs' inadequate claims here. These cases involve "*threatened physical contact that caused, or might have caused, immediate traumatic harm.*" *Metro-North*, 521 U.S. at 430 (emphasis added) (collecting cases); *see, e.g.*, *Stacy*, 609 F.3d at 1035 (freighter nearly struck plaintiff's vessel and then struck another ship, killing its captain); *Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 39 (1st Cir. 2018) (plaintiffs were aboard ferry that nearly capsized); *In re Clearsky Shipping Corp.*, No. Civ. 96-4099, 2002 WL 31496659, *1 (E.D. La. Nov. 7, 2002) (plaintiff was aboard a docked casino boat as a vessel collided with nearby wharf); *Hutton v. Norwegian Cruise Line Ltd.*, 144 F.Supp.2d 1325 (S.D. Fla. 2001) (plaintiffs aboard ship that collided with another vessel). Courts' consistent focus on near-miss collisions is unsurprising. The Supreme Court in adopting the zone of danger test emphasized that it would allow recovery for "emotional injury caused by the apprehension of physical impact." *Gottshall*, 512 U.S. at 556. In subsequently describing the test, it has equated being "placed in immediate risk of physical harm" with "escap[ing] *instant physical harm*." *Ayers*, 538 U.S. at 146. Expanding the category of "immediate risk" claims to cover alleged exposure to a communicable disease which the Plaintiff did not contract would be unprecedented.

Because Plaintiffs were not within the zone of danger under *Metro-North*, their allegations of emotional distress, no matter how severe, are insufficient to

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

survive a Motion to Dismiss. In *Gottshall*, one of the plaintiffs had suffered "insomnia, headaches, depression, and weight loss," followed by a "nervous breakdown." 512 U.S. at 539. The other had experienced "nausea, insomnia, cold sweats, and repetitive nightmares," plus weight loss, anxiety, and suicidal ideations. *Id.* at 536-37. The Supreme Court held that even these significant emotional injuries were not compensable because they did not stem from either a physical impact or a near-miss physical impact—*i.e.*, neither plaintiff was in the zone of danger. Even grave physical results cannot be redressed unless the plaintiff was in the zone of danger. *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 757 (M.D.N.C. 2014) (no recovery for "self-inflicted gunshot wound" as plaintiff was not in zone of danger).

Plaintiffs' allegations of gross negligence are similarly barred by the Supreme Court's analysis. *Metro-North*'s zone of danger test governs all species of tort claims seeking emotional distress, whether or not styled as claims of "negligent infliction of emotional distress." *See Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1171 (10th Cir.2000) (*Metro-North* and *Gottshall* "focused on whether emotional injuries were generally compensable under FELA, rather than upon the specific cause of action."); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 755 (M.D.N.C. 2014) ("Federal courts have consistently applied the zone of danger test to all stand-alone emotional distress claims.").

### 3. Finding Plaintiffs' Claims Sufficient Would Invite the Exact Policy Consequences the Supreme Court Warned Against

COVID-19 is a pandemic. Many of its carriers can be pre-symptomatic or asymptomatic, thereby not exhibiting any symptoms.[5] If a plaintiff can recover for emotional distress based on a fear of exposure to a widespread disease like COVID-

---

[5] "Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19), Centers for Disease Control and Prevention (May 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html; "How to Protect Yourself and Others," Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

19, there will be no limit on who can recover in the wake of the pandemic. *See Weissberger, supra.* Any business or other venue alleged to have opened its doors a day too soon could be open to claims of negligence by anyone who stepped inside and afterward fears they may have come into contact with a source of COVID-19. This concern is even more significant in relation to a widespread and often undetectable disease like COVID-19. Airline and public transportation will prove impossible. Individuals who attend a football game, eat at a restaurant, or shop at stores will all have potential emotional distress claims based entirely on having been allowed into a venue where someone later is found to have tested positive.

As this Court has previously found, allowing claims such as those of Plaintiffs' herein to proceed endorses the "nearly infinite and unpredictable liability for defendants" that *Gottshall* and *Metro-North* expressly set out to prevent. *Ayers*, 538 U.S. at 146; *see also Weissberger, supra.* Courts will be confronted with a "flood" of cases in which they "would be forced to make highly subjective determinations concerning the authenticity of claims for emotional injury, which are far less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552. Businesses will in effect become insurers for the mental well-being of everyone who passes through their doors.

Rejection of Plaintiffs' unprecedented theory is all the more important in the maritime context. A "fundamental interest of federal maritime jurisdiction" is "the protection of maritime commerce." *The Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2287 (2019) (quotation marks omitted). The Supreme Court, recognizing that maritime law is increasingly legislative in nature, has urged courts to resist judicial expansions of liability and remedies that would "frustrate" this protective purpose. *Id.* Allowing unpredictable and potentially crushing liability for ocean carriers to potentially all of their passengers in the wake of a pandemic would so seriously inhibit maritime commerce that, even if *Metro-North* did not forbid liability by its terms, principles of maritime law would independently require dismissal.

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

### C. Plaintiffs' Fail to Allege Non-Trivial Physical Injury Caused by Distress

To further guard against open-ended liability based on fear of illness, courts impose, as an independent and additional requirement, that the claimed emotional distress must cause non-trivial physical consequences. "General maritime law requires an 'objective manifestation' of the emotional injury—a physical injury or effect which arises from the emotional injury." *Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495, at *1 (W.D. Wash. Nov. 8, 2002); *accord Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477-478 (5th Cir. 2001); *Duet v. Crosby Tugs, LLC*, 2008 WL 5273688, at *3 (E.D. La. Dec. 16, 2008) ("Plaintiff's emotional distress was not provoked by a physical injury, rather, plaintiff's physical injury was provoked by emotional distress"); *Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318, 1325 (S.D. Fla. 2007) (Requiring physical manifestation of emotional injury for stand-alone emotional distress claims.)

Courts impose this physical-harm requirement because it "furnishes a 'guarantee of genuineness' to the fact-finder, thus limiting the prospects for a flood of fraudulent claims." *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995); *see also Tassinari*, 480 F. Supp. 2d at 1325 (S.D. Fla. 2007) (citing "the beneficial public policy of placing an objective and easily applied restriction on frivolous claims"). Under this rule, minor physical consequences are insufficient. *See, e.g.*, *Williams*, 907 F. Supp. at 407 (plaintiffs could not recover even though they were in the zone of danger because they "complain[ed] only of fear and/or seasickness which in most cases lasted no more than a few days"); *Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) (barring recovery for emotional distress where the plaintiff suffered "trivial" injuries, including upset stomach, headache, and pulled muscles); *Ellenwood v. Exxon Shipping*, 795 F. Supp. 31, 35 (D. Me. 1992) (loss of sleep and loss of appetite insufficient).

Plaintiffs' Complaint contains no allegation of any physical manifestations of their emotional distress, yet alone the serious and significant physical manifestation

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-04997-RGK-SK

which is required. As explained, such allegations are a prerequisite to stating a claim for emotional distress, even when the plaintiff meets the zone of danger test (which Plaintiffs here have not). Plaintiffs' allegations that they "suffer from emotional distress" and are "traumatized" from fear are exactly the sorts of generalized allegations of fear and anxiety that courts have held are clearly insufficient to support a claim for emotional distress. *Supra*; *see, e.g.*, *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995). Even if Plaintiffs had adequately pled both that they contracted COVID-19 as a result of Defendant's conduct and had pled facts sufficient to establish they were actually within the zone of danger to contract the virus, their claims would nonetheless fail for the separate reason that they have not adequately pled a physical manifestation of their emotional distress.

### D. Punitive Damages are Foreclosed as a Matter of Law

Assuming Plaintiffs' claims could go forward on the merits, Plaintiffs' claims for punitive damages are foreclosed as a matter of law and should therefore be dismissed under Rule 12(b)(6) or stricken under Rule 12(f). The Supreme Court has recently clarified several important limitations on the availability of punitive damages in maritime cases, all of which make clear that punitive damages are unavailable in cases alleging only emotional distress—at least where that distress is not intentionally inflicted. In *The Dutra Group v. Batterton*, 139 S. Ct. 2275 (2019), the Supreme Court set forth a framework for deciding when punitive damages are available under general maritime law, and then applied that framework to hold that punitive damages are unavailable in claims for unseaworthiness. First, where there is no federal statute authorizing punitive damages, courts must determine "whether punitive damages have traditionally been awarded" in the category of case at issue. *Id.* at 2283. If they are not, then the imposition of punitive damages is precluded. *See Dunn v. Hatch*, 792 F. App'x 449, 451 (9th Cir. 2019) (*Batterton* "held that punitive damages cannot be recovered on claims in admiralty where there is no historical basis for allowing such damages"). If the imposition of punitive damages

would create "bizarre disparities in the law," that further counsels against their availability. *Batterton*, 139 S. Ct. at 2287. And in determining whether to permit punitive damages, courts must proceed "cautiously in light of Congress's persistent pursuit of uniformity in the exercise of admiralty jurisdiction." *Id.* at 2278 (*Miles v. Apex Marine Corp.*, 498 U.S. 19, 27 (1986)).

Under this framework, Plaintiffs cannot recover punitive damages. While the Ninth Circuit has occasionally upheld the imposition of punitive damages for certain claims under general maritime law, *see Churchill v. F/V Fjord*, 892 F.2d 763, 772 (9th Cir. 1998), Defendant is aware of no binding precedent supporting the imposition of punitive damages for negligently (even grossly negligently) inflicted emotional distress. To the contrary, any "tradition" of punitive damages in maritime cases is limited to cases where the defendant's conduct is truly "outrageous"—cases of "enormity or deplorable behavior." *Dunn*, 792 F. App'x at 452.  And some courts have held expressly that punitive damages are unavailable to "personal injury claimants … except in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman (who are viewed as special wards of the court requiring additional protection), intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman, and in those very rare situations of intentional wrongdoing." *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997). As in *Batterton*, the absence of case law supporting the availability of punitive damages in suits for negligently inflicted emotional distress "is practically dispositive." *Id.* at 2284.

Even if the history of punitive damages under maritime law were more equivocal (which it is not), the imposition of punitive damages here would create the same "bizarre disparit[y] in the law" that demanded foreclosure of punitive damages in *Batterton*. The Court there noted that, if punitives were permitted for unseaworthiness claims, "a mariner could make a claim for punitive damages if he was *injured* onboard a ship, but," because of the Court's prior decision in *Miles*, "his

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

estate would lose the right to seek punitive damages if he *died* from his injuries." 139 S. Ct. at 2287 (emphasis added). The same disjoint would occur here, as the Death on the High Seas Act (DOHSA) expressly forbids the imposition of punitive damages for deaths caused by incidents more than three miles offshore. *See* 46 U.S.C. § 30303 (allowing damages only for "pecuniary loss"); *Batterton*, 139 S. Ct. at 2285 n.8. Under Plaintiffs' theory, passengers alleging exposure to a disease on the high seas can freely recover punitive damages if they never contracted the disease, and yet, if those same passengers died from the disease, DOHSA would squarely bar their claim for punitive damages. To avoid that arbitrary differential treatment, and to properly "pursue the policy expressed in congressional enactments" like DOHSA, punitive damages must be foreclosed. *Id.* at 2281.

The policies that drive strict application of the zone of danger test in emotional-distress cases, *see supra* section III.B, further cement that punitive damages cannot be available in cases involving emotional distress based on alleged disease exposure. To the extent that liability *alone* did not create the "infinite and unpredictable liability," *Ayers*, 538 U.S. at 146, the "stark unpredictability of punitive awards," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499 (2008), would make that threat an unavoidable reality. The mere allegation that plaintiff might be entitled to recover punitive damages will only further the flood of litigation that the Supreme Court has so clearly warned against in fear of disease cases. The open-ended threat of punitive damages would encourage more frivolous fear of disease cases and hobble "maritime commerce"—the "fundamental interest served by federal maritime jurisdiction." *Batterton*, 139 S. Ct. at 2287.[6]

## E. Plaintiffs' Complaint Violates Federal Rule of Civil Procedure 8

Dismissal is warranted as the Complaint violates Rule 8 by incorporating into

---

[6] Even if punitive damages were available, the Supreme Court has held that "under maritime law, the maximum ratio of punitive damages to compensatory damages is 1-1." *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1079 (9th Cir. 2009). If this Court does not dismiss or strike the request for punitive damages altogether, the Court should limit Plaintiffs' damages accordingly.

1  each claim all of the previous paragraphs in the Complaint. (*See* Compl. ¶¶ 22, 28,

2  33, and 46). This practice of "shotgun" pleading has been rejected. *Spindler v.*

3  *California*, 2020 WL 2559442, at *5 (C.D. Cal. Jan. 20, 2020); *Stanislaus Food*

4  *Products Co. v. USS-POSCO Industries*, 2010 WL 3521979, at *31 n.16 (E.D. Cal.

5  Sept. 3, 2010) (Incorporating "each preceding paragraph, regardless of relevancy,

6  [is] not permitted."); *Destfino v. Kennedy*, 2008 WL 4810770, at *3 (E.D. Cal. Nov.

7  3, 2008), *aff'd*, 630 F.3d 952 (9th Cir. 2011) ("This practice [of wholesale

8  incorporation of prior allegations] has been harshly criticized as a form of 'shotgun

9  pleading' which violates Rule 8's requirement of a 'short and plain statement' and

10 interferes with the court's ability to administer justice."); *Sollberger v. Wachovia*

11 *Securities LLC*, 2010 WL 2674456, at *4-5 (C.D. Cal. June 30, 2010) (incorporating

12 every allegation by reference "deprives Defendants of knowing exactly what they

13 are accused of doing wrong," and "alone warrants dismissal"). "The Court has

14 recognized that allowing shotgun pleadings would lead to many negative

15 consequences." *Sollberger*, at *4; *see also Mason v. County of Orange*, 251 F.R.D.

16 562, 563–64 (C.D.Cal.2008) ("[U]nless cases are pled clearly and precisely, issues

17 are not joined, discovery is not controlled, the trial court's docket becomes

18 unmanageable, the litigants suffer, and society loses confidence in the court's ability

19 to administer justice.").

20 ## F.  Plaintiffs' Breach-of-Contract Claim Fails

21        As an initial matter, this Court has dismissed Complaints that allege a breach-

22 of-contract but fail to either attach the contract or delineate the terms of the contract

23 which obligate the Defendant, noting that such a "breach-of-contract claim has no

24 factual basis." *Lam v. Liberty Mut. Group, Inc*., 2017 WL 4682712, at *2 (C.D. Cal.

25 May 18, 2017), aff'd, 716 Fed. Appx. 646 (9th Cir. 2018). Here Plaintiffs do not

26 attach the contract, and do not identify what oral or written contract they claim was

27 breached. As the alleged breached terms do not exist in the Passage Contract,

28 Defendant has no idea what contract they claim was breached.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

17

Assuming the Court is inclined to entertain Plaintiffs' breach-of-contract claim, the Complaint still fails to satisfy the elements of a breach-of-contract claim. "To adequately state a claim for breach of contract, Plaintiff must allege the following elements: (1) existence of a contract; (2) his or her performance of the contract; (3) the defendant's breach; and (4) resulting damages." *OJ Insulation, Inc. v. First Speciality INS. Co*., 2011 WL 13116734, at *2 (C.D. Cal. Feb. 10, 2011). Plaintiff has failed to plead damages, as Plaintiffs rely upon the boilerplate claim that Plaintiffs "have been damaged in an amount to be shown according to proof at trial." (Compl. ¶26.) Plaintiff's breach-of-contract claim is precisely the sort of "[t]hreadbare recital [] of the elements of a cause of action" that cannot defeat a motion to dismiss. *Ashcroft v. Iqbal,* (2009) 556 U.S. 662, 678.  Assuming Plaintiffs allege emotional damages stemming from the alleged breach-of-contract, such damages are unavailable as a matter of law. *See Carden v. NW. Airlines, Inc*., 2005 WL 8155001, at *4 (C.D. Cal. Aug. 26, 2005)("In California, damages for emotional distress are generally not recoverable in breach of contract actions," unless "the *express object* of the contract is the mental and emotional well-being of one of the contracting parties."). This claim is also barred by the Supreme Court's decision in *Metro-North*. *Metro-North*'s zone of danger test governs all claims seeking emotional distress, whether or not styled as claims of "negligent infliction of emotional distress." *See Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1171 (10th Cir.2000) (*Metro-North* and *Gottshall* "focused on whether emotional injuries were generally compensable under FELA, rather than upon the specific cause of action."); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 755 (M.D.N.C. 2014) ("Federal courts have consistently applied the zone of danger test to all stand-alone emotional distress claims.").

## G. Plaintiff Alleges an Incorrect Standard of Care Under a California Statute Which Is Preempted by Maritime Law

When a case falls within a court's maritime jurisdiction, then "substantive

DEFENDANT'S MOTION TO DISMISS                    2:20-CV-04997-RGK-SK

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

maritime law"—not state law—"controls the claim, 'whatever the forum or asserted basis of jurisdiction.'" *Adamson v. Port of Bellingham*, 907 F.3d 1122, 1125-26 (9th Cir. 2018) (quoting *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 366 n.1 (9th Cir. 1992)); *see E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law."). As a key purpose of maritime jurisdiction is to protect maritime commerce, maritime law applies to the *exclusion* of state law whenever state law "conflict[s] with federal law or interfere[s] with the uniform working of the maritime legal system." *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1422 (9th Cir. 1990). Plaintiffs should not be permitted to circumvent *Metro North*, adopted into the body of maritime law by *Negron*, by relying upon a state law which would undermine the uniformity of the well settled body of maritime law. That is paradigmatically true where a plaintiff seeks to impose a standard of liability different from the federal standard, *see e.g.*, *State of Md. Dep't of Nat. Res. v. Kellum*, 51 F.3d 1220, 1226 (4th Cir. 1995). In such circumstances, it is "improper[]" to "allow[] [a party] to proceed with … putatively 'non-maritime' counts." *Unigard*, 982 F.2d at 366 n.1.

"Maritime law requires a cruise ship 'to exercise reasonable care under the circumstances of each case.'" *Casorio v. Princess Cruise Lines*, Ltd., 677 Fed. Appx. 361, 362 (9th Cir. 2017) *citing Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1290 (9th Cir. 1997); *see also Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1339–40 (S.D. Fla. 2016) ("It is well established that a cruise ship operator owes its passengers the duty of exercising reasonable care") (citing *Lugo v. Carnival Corp.*, No. 1:15–CV–21319–KMM, 154 F.Supp.3d 1341, 1345, 2015 WL 9583280, at *3 (S.D. Fla. Dec. 31, 2015); *Torres v. Carnival Corp.*, 635 Fed. Appx. 595, 600-01 (11th Cir. Nov. 20, 2015)); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)("it is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care"); *Everett v. Carnival Cruise Lines*, 912

1   F.2d 1355, 1358 (11th Cir. 1990) (citing *Keefe v. Bahama Cruise Line, Inc.,* 867

2   F.2d 1318, 1322 (11th Cir. 1989))("the benchmark against which a shipowner's

3   behavior must be measured is ordinary reasonable care under the circumstances").

4   "To require more would be to impose a higher burden on common carriers than

5   California law requires." *Casorio* at 362.

6        Plaintiffs attempt to hold Princess to a higher standard of care by pleading

7   that Defendant "owed a duty of utmost care of a very cautious person." (Compl. ¶

8   29). Such a duty is not cognizable under and is preempted by maritime law. *See*

9   *Thompson*, 174 F. Supp. 3d at 1342. Plaintiffs' allegations based on an improper

10  heightened standard of care should be dismissed with prejudice because they fail as

11  a matter of law. *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1318 (M.D. Fla.

12  2002) (dismissing negligence claim because plaintiff alleged improper heightened

13  standard of care instead of alleging "reasonable care under the circumstances");

14  *Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F. Supp. 2d 1278, 1283 (S.D. Fla.

15  2007) (same). Dismissal is warranted where "Plaintiff has failed to allege that

16  Defendant breached a duty it actually owed to Plaintiff." *See Leftow v. Princess*

17  *Cruise Line, Ltd.*, 2018 WL 6133714, at *2 (C.D. Cal. Jan. 11, 2018); *see also White*

18  *v. NCL Am., Inc. & Norwegian Cruise Line Ltd.*, 2007 WL 414331, at *2 (S.D. Fla.

19  Feb. 6, 2007) (dismissing when "Plaintiff's allegations seek to create a duty on the

20  part of the Defendants which is greater than that supported by the case law").

21  **V.   CONCLUSION**

22       For the foregoing reasons, Defendant requests that the Court grant its motion

23  to dismiss and to dismiss this case with prejudice.

24

25  DATED: July 31, 2020              MALTZMAN & PARTNERS

26                            By:   *s/ Jeffrey B. Maltzman*
                                    Jeffrey B. Maltzman
27                                  Edgar R. Nield
                                    *Attorneys for Defendant,*
28                                  *Princess Cruise Lines Ltd.*