Daniel L. Rottinghaus, California Bar No. 131949
Scott M. Mackey, California Bar No. 222217
Seema N. Kadaba, California Bar No. 304952
**BERDING & WEIL LLP**
2175 N. California Blvd, Suite 500
Walnut Creek, California 94596
Telephone:   925.838.2090
Facsimile:   925.820.5592
drottinghaus@berdingweil.com
smackey@berdingweil.com
skadaba@berdingweil.com

Gary A. Angel, California Bar No. 70006
**Law Offices of Gary A. Angel**
177 Post Street, Fifth Floor
San Francisco, CA 94108
Telephone:   415-788-5935
Facsimile:   415-788-5958
angelgary@aol.com

Attorneys for Plaintiffs
KEN AND MARLA SALTZSTINE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN AND MARLA SALTZSTINE, individually | No. 2:20-cv-04997-RGK-SK |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DAMAGES FOR PERSONAL INJURY** |
| vs. | |
| PRINCESS CRUISE LINES, LTD., a Bermuda corporation, | **JURY TRIAL REQUESTED** |
| Defendant. | |

Plaintiffs, by and through their undersigned counsel, hereby sue Defendant, PRINCESS CRUISE LINES LTD. (hereinafter, "PRINCESS"), and allege as follows:

/ / /

/ / /

## **PARTIES AND JURISDICTION**

1. This is an action seeking damages in excess of $500,000.00 (Five Hundred Thousand Dollars) exclusive of interest, costs, and attorney's fees.

2. This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state.

3. This Court also has Admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333 as this case involves a maritime tort.

4. Plaintiff KEN SALTZSTINE, sui juris, is a resident of the city of El Sobrante, County of Contra Costa, in the State of California, and was a passenger onboard the Grand Princess.

5. Plaintiff MARLA SALTZSTINE, sui juris, is a resident of the city of El Sobrante, County of Contra Costa, in the State of California, and was a passenger onboard the Grand Princess. (KEN and MARLA SALTZSTINE shall collectively be referred to herein as "PLAINTIFFS".)

6. Princess Cruise Lines LTD. is incorporated in Bermuda, with its headquarters in Santa Clarita, California. The action is being filed in this Court pursuant to the terms and conditions of the Passenger Contract issued by Defendant, Princess Cruise Lines Ltd.

7. At all times hereto, PRINCESS owned and operated the cruise ship the Grand Princess.

8. This Court has personal jurisdiction over PRINCESS as PRINCESS' principle place of business is located in Los Angeles County, Los Angeles.

9. PRINCESS conducts substantial business within the state of California, including operating cruises from ports in San Francisco, San Diego, and Los Angeles.

10. PRINCESS markets cruise vacations to California residents and employs thousands of California residents to work at its California headquarters.

///

11. PLAINTIFFS were passengers aboard the Grand Princess which departed out of San Francisco on February 21, 2020.

12. Defendant experienced an outbreak of COVID-19 on board one of its vessels less than a month prior to the voyage on board the Grand Princess. PRINCESS should have taken all necessary and reasonable precautions to keep its passengers, crew, and the general public safe. Unfortunately, PRINCESS failed to do so and PLAINTIFFS have been physically harmed.

**GENERAL ALLEGATIONS**

13. PLAINTIFFS purchased for consideration from PRINCESS passenger tickets (Booking Reference CM6XWN). Said tickets provided that PLAINTIFFS would be passengers on board PRINCESS' vessel "GRAND PRINCESS" (vessel number A006), and that PRINCESS would be a common carrier and provide transportation for PLAINTIFFS, and transport PLAINTIFFS from San Francisco to Hawaii, then Mexico, and back to San Francisco. Said passenger tickets were provided from PRINCESS to PLAINTIFFS. The duration of the trip was to be from February 21, 2020 through March 7, 2020.

14. On or about February 21, 2020, PLAINTIFFS boarded the vessel and became passengers on said vessel. PLAINTIFFS are informed and believe and thereon allege that PRINCESS should not have allowed any person to board the vessel based on the level of illness on the previous cruise. PRINCESS knew or should have known that individuals were sick on the vessel's previous cruise and should not have had any passengers board this vessel and should not have embarked on this trip due to the high risk of infection from COVID-19.

15. PLAINTIFFS are both diabetic and over the age of sixty-five, placing them in the "high-risk" category, and were quarantined for four and a half days on the vessel with sporadic mealtimes, which caused physical injuries, varying sugar levels, exacerbating their diabetes, and resulting in physical harm to PLAINTIFFS. Moreover, PLAINTIFFS ordered medication on the vessel, which was promised but never received, resulting in further physical harm to PLAINTIFFS due to the fact that their blood pressure levels increased, resulting in additional issues with the function of the pancreas and insulin levels. This put PLAINTIFFS' sugar levels into a tailspin. KEN SALTZSTINE'S A1-C and daily blood sugar levels became elevated onboard and this

condition continues to the present day.

16. Although the original disembarkation was to be March 7, 2020, PLAINTIFFS did not disembark until March 10, 2020 and their temperatures were not taken until they were off the vessel. Moreover, PRINCESS then provided bussing services to Travis Air Force Base, without following any social distancing requirements or providing hand sanitizer and masks, thereby failing to ensure the safety of its passengers, including PLAINTIFFS.

17. Once PLAINTIFFS arrived at Travis Air Force Base, they were put into a fourteen (14) day mandatory Center for Disease Control quarantine. However, this was not accomplished given that the meals were given in the lobby area all together. The testing for COVID-19 that occurred was disjointed and mismanaged, and evacuees were not provided with temperature tests in an orderly fashion. This resulted in further physical harm to PLAINTIFFS based on the fact that their diabetic condition worsened while in quarantine. This was due to the meals provided and lack of needed medication for the entire 18.5-day quarantine period.

18. As a result of PRINCESS' breach of its contractual duties as a common carrier, and as a result of its negligence and carelessness, PLAINTIFFS sustained personal injuries and physical injuries.

19. MARLA SALTZSTINE has been prescribed Lexapro since October 31, 2009, for anxiety and depression. As a result of the physical harm experienced both onboard and at Travis Air Force Base, this anxiety and depression worsened and continues to worsen. This physical harm is a direct result of PRINCESS' negligence in allowing the ship to disembark, despite knowing the risks involved.

20. As a direct, legal, and proximate result of PRINCESS' carelessness, negligence, breach of duty, and breach of contract of carriage, PRINCESS has caused PLAINTIFFS to sustain physical and personal injuries and damages, medical care, pain and suffering, residual disability, continuing medical care, and future pain and suffering which will continue and which has caused PLAINTIFFS significant damages.

21. As stated by the Center for Disease Control ("CDC"), people over the age of 60 are at an especially high risk, with a fatality risk more than 50 times higher than the annual fatality

risk of driving an automobile. See https://www.nber.org/papers/w27597.pdf. PRINCESS failed to disclose to boarding passengers and PLAINTIFFS that the prior cruise contained a person who not only was sick in transit, but was still sick when he was discharged from the ship. Further, PRINCESS failed to take any precautions such as hand sanitizer or masks, despite being on notice of these necessities from the CDC. PRINCESS co-mingled boarding luggage with the luggage of the prior customers and failed to immediately test their own personnel for exposure. Finally, the ship had fans and they were running and the same dispersed the virus throughout the ship, and the virus can and did survive on hand railings, windowsills, door handles, and luggage.

22. The CDC provided updated guidelines on February 13, 2020, a week before PLAINTIFFS boarded the ship. PRINCESS should have taken the measures called for by the CDC for cruise ships and taken measures to protect its passengers.

23. PRINCESS failed to have procedures in place for handling a virus concern and were not diligent in obtaining the latest relevant information about virus and disease. PRINCESS failed to immediately consult with professionals in the industry, thereby putting their financial and corporate interests ahead of the health and safety of PLAINTIFFS, the other passengers, and the general public.

24. The captain of the ship failed to take charge to implement the ship's health and safety protocols, and to find out more about the ill passenger on the previous vessel. Further, the health doctor or physician onboard was not properly trained to appreciate the harm left behind by the sick passenger, failed to understand and diagnose the severity of the problem, failed to have the proper education and training to know what to do, and failed to act prudently with the information available. Moreover, the fact that PRINCESS did not employ an infectious disease expert was negligent and below the standard of care. This resulted in physical injury to PLAINTIFFS.

## COUNT I

### (Breach of Contract)

25. PLAINTIFFS re-allege all allegations in paragraphs 1 through 24, inclusive, as though fully set forth herein.

26. By and through the purchase of a ticket PLAINTIFFS and PRINCESS entered into a contract whereby PRINCESS was to perform certain duties in exchange for the monies received from PLAINTIFFS.

27. PLAINTIFFS performed all duties required of them under the contract.

28. PRINCESS breached the contract by failing to warn PLAINTIFFS of the risk of COVID-19, improperly disembarking despite knowing the risk, and disregarding the safety and health of PLAINTIFFS on board, as well as during the transportation to and relative to the time at Travis Air Force Base.

29. PRINCESS further breached the contract by failing to ensure that its passengers were provided the necessary meals and medication.

30. As a direct and proximate result of PRINCESS' breach, PLAINTIFFS have been damaged in an amount to be shown according to proof at trial.

31. WHEREFORE, PLAINTIFFS pray for judgment against PRINCESS as set forth below.

## COUNT II

### (Negligence)

32. PLAINTIFFS re-allege all allegations in paragraphs 1 through 31, inclusive, as though fully set forth herein.

33. PRINCESS owed PLAINTIFFS, who were paying passengers that boarded the vessel, the duty to ensure that they would not be exposed to unreasonable risk of harm that PRINCESS knew or should have known about while sailing on its vessel.

34. PRINCESS breached its duty in that it had knowledge that at least one of its passengers from the prior voyage who disembarked February 21, 2020 had symptoms of coronavirus, and yet decided to continue sailing the voyage that began on February 21, 2020 with another three thousand passengers.

35. Specifically, PRINCESS was aware of at least two passengers who disembarked its ship on February 21, 2020 in San Francisco had symptoms of the coronavirus. It went as far as to send emails on February 25, 2020 to passengers who boarded the vessel, notifying them of the

potential of exposure to the coronavirus while onboard their cruise.

36. There are at least sixty-two passengers on board the PLAINTIFFS' cruise, who were also on the prior voyage, who were exposed to the passengers that were confirmed to be infected.

37. In continuing to sail with another three thousand passengers, including PLAINTIFFS on February 21, 2020, knowing that some of those passengers and crew had already been exposed to COVID-19, PRINCESS exposed PLAINTIFFS to an actual risk of immediate physical injury, which actually resulted in physical injury to PLAINTIFFS. Moreover, the stress and trauma arising from the real and dangerous fear of contracting COVID-19.

38. PRINCESS was further negligent in failing to have proper screening protocols for COVID-19 prior to boarding the passengers on the vessel. Despite the knowledge and experience it had with the outbreak on the Diamond Princess three weeks prior, PRINCESS did not have proper screening protocol in place to minimize the risk of exposure of the disease to its passengers and crew. PRINCESS should have known that failing to address this risk would result in passengers with pre-existing conditions to suffer further medical injuries and complications based on their negligence. By failing to take into account the risk of exposure to COVID-19 and the need to quarantine its passengers, PLAINTIFFS suffered direct physical harm and physical injuries.

39. Prior to boarding the vessel, passengers were only asked to fill out a piece of paper confirming they were not sick. No passengers were examined in any capacity. Moreover, out of those sixty-two passengers or crew members who were infected, none were examined during the voyage until being tested for the virus on Thursday March 5, 2020, two weeks after the ship sailed.

40. As a result of the Defendant's failure to ensure the safety of PLAINTIFFS, its passengers, and crew aboard the vessel, including PLAINTIFFS, have been physically injured and sustained personal injuries and damages.

41. Moreover, PRINCESS was negligent in failing to adequately warn PLAINTIFFS about the potential exposure to COVID-19 prior to boarding the ship on February 21, 2020, and again during the voyage. PRINCESS had actual knowledge of at least two passengers who sailed

on its ship the week prior, disembarked with symptoms of coronavirus, and one confirmed death as a result. PRINCESS also knew that there were sixty-two passengers and crew who were onboard that same sailing and failed to inform PLAINTIFFS at any time prior to boarding or while they were already onboard, that there was a high risk of exposure to COVID-19. In addition, PRINCESS failed to inform PLAINTIFFS that a crew member aboard their cruise disembarked in Hawaii as a result of coronavirus.

42.   If PLAINTIFFS had knowledge of this actual risk of exposure prior to boarding, they would have never boarded the ship. If they were informed of the risk on February 25, 2020, when the former passengers were notified by email, PLAINTIFFS would have disembarked at the first port of call in Honolulu on February 26, 2020. Due to PRINCESS' negligence in failing to warn PLAINTIFFS of the actual risk of exposure to COVID-19 aboard its infected ship, PLAINTIFFS were quarantined in their cabin, without access to meals to properly control their diabetes, along with the rest of the passengers and crew, off the coast of San Francisco, anxiously awaiting their fate, until they were transferred to Travis Air Force Base where they remained quarantined and, due to a lack of organization, were further at risk.

43.   As a direct and proximate result of this negligence of PRINCESS, in exposing them to actual risk of immediate physical injury, PLAINTIFFS suffered personal and physical injuries and continue to suffer from emotional distress. PRINCESS caused PLAINTIFFS to sustain personal and physical injuries and damages, medical care, pain and suffering, residual disability, continuing medical care, and future pain and suffering, which will continue and which has caused PLAINTIFFS significant damages.

44.   WHEREFORE, PLAINTIFFS pray for judgment against PRINCESS as set forth below.

## COUNT III

**(Gross Negligence)**

45.   PLAINTIFFS re-allege all allegations set forth in paragraphs 1 through 44, inclusive, as though fully set forth herein.

/ / /

46. PRINCESS' conduct in deciding to allow PLAINTIFFS to board the vessel and continue to sail with PLAINTIFFS on board, knowing that the ship was infected from two previous passengers who came down with symptoms of COVID-19, and had sixty-two passengers on board with PLAINTIFFS who were previously exposed to those two infected individuals, along with the prior crew, shows a lack of any care on the part of PRINCESS, and a complete disregard for the safety of PLAINTIFFS, amounting to gross negligence.

47. PRINCESS knew how dangerous it was to expose PLAINTIFFS and the rest of its passengers to COVID-19 in light of its experience with the Diamond Princess three weeks prior. However, PRINCESS departed from what a reasonably careful cruise line would do under the circumstances in allowing PLAINTIFFS to board and continuing to sail with PLAINTIFFS despite these grave risks, which actually resulted in physical injury to PLAINTIFFS based on their worsening diabetes, anxiety, and depression.

48. Moreover, PRINCESS' conduct in failing to warn PLAINTIFFS of their actual risk of harm in being exposed to COVID-19, either prior to boarding or while they were already on board, in light of the prior passenger who came down with symptoms who ended up dying, along with others who came down with symptoms from that prior voyage, and the crew member who disembarked during this voyage from the virus, amounts to an extreme departure of what a reasonably careful cruise line would do.

49. PRINCESS chose to place profits over the safety of its passengers, crew, and the general public in continuing to operate business as usual, despite their knowledge of the actual risk of injury to PLAINTIFFS.

50. WHEREFORE, PLAINTIFFS pray for judgment against PRINCESS as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray for judgment against PRINCESS, as follows:

1. For damages in an amount according to proof for PLAINTIFFS' personal injuries, medical care, in the form of general and special damages, in an amount according to proof, but in excess of $500,000.00.

2. An award of compensatory damages allowed by contract, law, and equity in an amount according to proof;

3. Pre-judgment and post-judgment interest on all sums awarded, at the maximum legal rate;

4. Damages for investigation costs and expenses and for dispute resolution facilitators, special masters, discovery referee, and technical fees and costs as provided by law;

5. Costs, including attorneys' fees, incurred in this action as provided by statute, contract, or common law; and

6. For such other and further relief as the Court may deem just and proper.

Date: August 10, 2020        **BERDING & WEIL LLP**

By:_____
    Daniel L. Rottinghaus
    Scott M. Mackey
    Seema N. Kadaba
    Attorneys for Plaintiffs
    KEN AND MARLA SALTZSTINE

Date: August 10, 2020        **LAW OFFICES OF GARY A. ANGEL**

By:_____/S/_____
    Gary A. Angel
    Attorneys for Plaintiffs
    KEN AND MARLA SALTZSTINE

4835-6741-2167, v. 1

# PROOF OF SERVICE

**Case Name:** *Ken and Marla Saltzstine v. Princess Cruise Lines, LTD*
**Case No:** USDC - Central District of California Case No. 2:20-cv-04997-DDP-PJW

I am employed in the County of Contra Costa, State of California. My business address is 2175 N. California Blvd, Suite 500, Walnut Creek, California 94596. I am over the age of eighteen years, and not a party to the within action.

On August 10, 2020, I served the within:

**SUMMONS ON FIRST AMENDED COMPLAINT**

**FIRST AMENDED COMPLAINT FOR DAMAGES FOR PERSONAL INJURY**

on the party(ies) listed below, addressed as follows:

**(SEE ATTACHED SERVICE LIST)**

☐ **By First Class Mail/Ordinary Business Practices [C.C.P. §§ 1013, 1013a].** By causing a true copy thereof to be enclosed in a sealed envelope or package, addressed to the party[ies] as stated on the attached service list. I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the United States Postal Service. Under the firm's practice, mail is deposited in the ordinary course of business with the United States Postal Service at Walnut Creek, California, that same day, with postage thereon fully prepaid. I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☒ **By Electronic Service:** The above document was served electronically on the parties appearing on the attached service list associated with this case. A copy of the electronic mail transmission(s) will be maintained with the proof of service document in our file.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed August 10, 2020, at Walnut Creek, California.

By: *Barbara Curzi*
Barbara Curzi

# SERVICE LIST

**Case Name:** *Ken and Marla Saltzstine v. Princess Cruise Lines, LTD*
**Case No:** USDC - Central District of California Case No. 2:20-cv-04997-DDP-PJW

Jeffrey B. Maltzman, Esq.
Edgar R. Nield, Esq.
Gabrielle De Santis Nield, Esq.
Rafaela P. Castells, Esq.
MALTZMAN & PARTNERS, P.A.
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880
Facsimile: (760) 942-9882

jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
gabn@maltzmanpartners.com

Attorneys for Defendant
PRINCESS CRUISE LINES, LTD.

4819-2865-4528, v. 1